Where the question is properly before the court by this appeal, we are of opinion that the act is not plainly, palpably, beyond all question, inconsistent with the Constitution, but is in every respect a valid exercise of legislative power, and in no way conflicts with the state Constitution.

*Affirmed.*

Ellzey Guess *v*. Western Union Telegraph Co.

[59 South. 876.]

Telegraph Messages. *Failure to deliver. Defenses. Question for jury.*
    Where in a suit for the nondelivery of a telegram, defendant
    proved that on the day the message was sent it was rainy and
    that the wires were weakened because of the dampness and that
    a mistake in the name of the sendee was probably caused
    thereby which was the reason of the nondelivery of the mes-
    sage; it was error for the court to grant a peremptory instruc-
    tion for the defendant as its liability was a question for the
    jury.

Appeal from the circuit court of Harrison county.
Hon. Geo. S. Dodds, Judge.

Suit by Ellzey Guess against the Western Union Telegraph Company. From a judgment for defendant, plaintiff appeals.

Appellant brought suit against the appellee for damages for nondelivery of a telegram. The facts are in substance, as follows: On March 25, 1911, appellant's brother delivered to the agent at Rockport, Miss., a telegram directed to "Ellzey Guess, 1307 29th avenue, Gulfport, Mississippi," announcing the killing of his brother-in-law, and requesting his presence at the funeral. In the transmission of the message, the word "Ellzey" was

changed to to "Eliza," and the word "29th," was changed to "28th." In consequence of this change, the telegram was not delivered, though the agent at Gulfport testifies that he made efforts to find the addressee at the address given in the message as received by him. It was some six days later that appellant was advised by mail of the death of his brother-in-law.

Appellee defended on the ground that the wires were weak because of rainy weather, and that the mistake probably was due to breaks in the message, so that, although it was sent out properly over the wires, the dampness so affected the wires that the mistake was unavoidable, and not due to any negligence of the agents of the telegraph company. It was shown that it was raining during the time the message was in the course of transmission. The court gave a peremptory instruction for the telegraph company, and the appellant appeals.

*J. H. Mize,* for appellant.

In support of our contention, we cite the cause of *Redington* v. *Pacific Postal Telegraph Cable Company,* reported in 170 Cal. 317; 5 Am. Elec. Cases, p. 693, a suit for the recovery of damages because of the failure of the defendant company to correctly transmit an unrepeated telegraphic message. Plaintiff there delivered to the defendant a message to be sent to the sheriff of Tulare county, directing the sheriff to attach property of a certain company to the amount of one thousand, nine hundred and three dollars, and, in the transmission of said message, the company omitted the syllable "teen" from the word "nineteen," making the message as received nine hundred and three dollars worth of property instead of one thousand, nine hundred and three dollars worth; and the plaintiff sued for the amount of damages he suffered. The cable company defended on the ground that on the day in question, the weather was cloudy, with light rains, and that the current was likely

to be diverted from the wires by contact with trees, etc. Plaintiff introduced in rebuttal an expert electrician, who testified that the syllable "teen" could not be lost from a message in course of transmission without the knowledge of the receiving operator, if he was competent; and, if not known by the sending or receiving operator, it would be because they, or one of them, was not competent as an operator, and the reason the operator should detect the omission would be because of the cessation of flow of the electrical current; and, on this state of facts, the question was raised whether they established a *prima facie* case of gross negligence on the part of the company. In that case, the plaintiff had to show gross negligence, because there was a stipulation on the message that the company would not be held liable for an unrepeated message, which was the holding of the court of California, unless gross negligence was shown. The court held that the omission of the syllable "teen" from the word "nine" was sufficient to show gross negligence on the part of the company, and a verdict for the plaintiff was upheld.

The case above cited is almost in point with the instant case. While it is true that there an expert electrician testified that the syllable "teen" could not be lost in transmission without being detected by a competent operator; yet, in the instant case, the witness, Sturtevant, for the defendant, testified that if the wires had been in much trouble he would have had doubt about the correctness of the message, but that he had no doubt about the correctness of the message in the instant case, and therefore did not ask for a repetition, and he knew of no weak condition of the wires at said time. Thus it is seen that, by his own testimony, this witness makes out a case of gross negligence against the telegraph company; in other words, if the wires had been in weak condition, as appellee attempted to defend on, the operator in New Orleans would certainly have detected it, according to his own testimony.

In the case of *Western Union Telegraph Company* v.
*Goodbar et al.,* reported by the Supreme Court of Missis-
sippi February 3, ——, 7 So. 214, the plaintiff delivered
to the Western Union a telgram to be sent to his attor-
neys, directing them to attach six hundred and sixty-three
dollars worth of property of certain parties named in
the telegram, and asked for an answer. In transmission,
the word "six" was omitted before "hundred and sixty-
three," and the telegram as received by the sendee read
one hundred and sixty-three dollars worth of property
instead of six hundred and sixty-three dollars worth,
and the word "Answer" was dropped from the tele-
gram. The agent at the receiving station testified that
the atmosphere in that location was not favorable for the
receipt of messages on that particular occasion; that the
instruments were dragging and working indistinctly;
and it was also in evidence that the sending agent in-
formed the receiving agent of the number of words in
the telegram and received a signal from the receiving
agent that the message had been properly received and
contained the number of words indicated. The court held
in said case that gross negligence was shown on the part
of the telegraph company and that a verdict for the
plaintiff should be sustained.

Here we have a case decided by our own court, almost
identically in point with the instant case, except that the
words in which the error occurred are in the body of the
telegram while, in the instant case, the errors complained
of are in the address, the most important part. In the
case last cited, the defense was practically the same as
in the instant case and the testimony in the cited case
was stronger in favor of the defendant than in the pres-
ent case, for there it was shown positively that the in-
struments were dragging and working indistinctly at the
receiving station, while in the instant case the agent at
the sending station testified only that in his opinion or
belief the errors were due to the condition of the wires,

but. nowhere did he state positively that such was the case; and, at the receiving station, the operator stated positively that, so far as he knew, there were no weak wires on that occasion, and that there could not have been much trouble with the wires or he would have had doubt as to the correctness of the message received, whereas, in truth and fact, he had no doubt as to its correctness.

We therefore submit that, in this case, gross negligence is shown on the part of the Western Union Telegraph Company in that the number "29" was changed to "28" and the word "Ellzey" was changed to "Eliza" both of these errors being vital and in the most important part of the telegram, the address, for of course such errors in the address of the telegram make it impossible to find the sendee at all, unless he happens to be a very prominent person; hence, we submit that this was gross negligence, or at least such negligence that the case should properly have been submitted to the jury.

*Bowers & Griffith,* for appellee.

The whole case is so utterly set apart from any showing of the cause of action for punitive damages as set out in the declaration, that the language of the supreme court in *Western Union Tel. Co.* v. *Miller,* 52 So. 702, was bound to control the trial court, and cause the granting of the peremptory instruction, and such was done. In the case cited, your honors said:

"At the close of the evidence, a peremptory instruction was asked by the defendant and refused. The instruction ought to have been given. There was no evidence from which the jury could have inferred that the delay in delivering the telegram was characterized by malice, fraud, oppression, or willful wrong, evincing a disregard of the rights of others, or by such wanton, reckless, or grossly careless conduct, as is equivalent *phone Co.* v. *Allen,* 89 Miss. 832; *Hilley* v. *Tel. Co.,* 85 thereto." *Duncan* v. *Telegraph Co.,* 93 Miss. 500; *Tele-*

Miss. 67; *Telegraph Co.* v. *Sprattey,* 84 Miss. 86; *Telegraph Co.* v. *Jackson,* 49 So. 737.

Two cases are cited by appellant, *Reddington* v. *Pacific Co.,* 170 Cal. 317; 5 Am. & Eng. Cas. 693, where the syllable "teen" was omitted from a word in the body of the telegram. An expert testified on behalf of plaintiff, that the syllable "teen" could not have been lost without the knowledge of the receiving operator, and gave as a reason, p. 696, "that the rest, or space of time necessary to receive the syllable 'teen' (one to three seconds) would indicate to him something wrong." Defendant introduced no testimony, but moved for a nonsuit, which was denied. Here we have an entirely different case, in that the dash at the end of the figure nine, was broken into two dots occupying the same space of time, and at the end of the word or figure, whereas in the Reddington case the omission was in the middle of a word. In the Reddington case there was something to put receiving operator on guard, in the case in hand nothing.

The other case cited by appellant is *Western Union* v. *Goodbar,* 7 So. 214, where two words were omitted from body of telegram, and yet receiving operator had been informed of the number of words, saw that he had failed to take two of them, and was unable to explain why he did not get the number sent, he knowing that he was short two words. In the instant case, the error was not in the body; the number of words were correct; there was nothing to put receiving operator on guard. These two cases are wholly out of point on the correct facts.

The nearest case we have been able to find on facts similar to this, to wit, error in transmission, and in the address, and in relaying, and causing failure of delivery, is *Straus* v. *Postal Telegraph Cable Company,* 64 S. E. 913, where the words "726 Pine Street" in the address, were entirely omitted, and the court, p. 914, said: In the absence of other circumstances, the fact that the words were omitted, for some unaccountable reason, is

not sufficient to show intentional wrong, or reckless disregard of the plaintiff's rights.

It is manifest that there was much more ground for plaintiff's contention in that case than there is in the case in hand; in fact the defendant here has not only negatived willful or gross wrong, or negligence, but has demonstrated that it is not even a case of simple negligence.

We call the court's special attention to the reasoning, as well as to the point decided on this issue in the case of *Halstead* v. *Postal Company*, 85 N. E. 1078, decided by the New York Court of Appeals November 10, 1908, all the judges of that great court concurring:

The word "eighty" was changed to "eight," or the letter "y" to "h" in two instances in telegram, resulting in loss.

There was no evidence of negligence in the transmission of the message, other than in the changes made in the message in its transmission. There was evidence that the atmospheric and electrical conditions and disturbances might affect the accurate transmission of a telegraphic message, although the possibilities of such changes being caused thereby in the symbols or signals, as were affected in this case, were somewhat in dispute upon the evidence of the experts.

The court said (see bottom second column, page 1079): "So far as the plaintiff's claim was predicated upon the alleged gross negligence of the defendant, in the performance of the undertaking, to transmit to them the telegraphic message from the sender in North Carolina, it is sufficient to say that the evidence wholly failed to make out any case for the jury on that theory. It showed simply the commission of an error, which so far as material in its consequences, occurred in the change of the word 'eighty' to 'eight.' The letter 'y' was changed to 'h' in two instances. Whether such changes were the inadvertent or mistaken act of the receiving

operator, or of any operator at the relay station, or whether they were the result of atmospheric disturbances, or of perturbations of the electric fluid, to which concededly the transmission of telegraphic messages is more or less subject, is not material. The nature of the undertaking by a telegraphic company suggests the possibility, if not probability, of peculiar risks affecting it, whether in the one, or the other way. However occurring, if by no willful misconduct, a mere mistake or error in the transmission of a message would not warrant a jury in finding that there had been more than ordinary negligence.'' The remainder of the decision is upon a point not involved here.

SMITH, C. J., delivered the opinion of the court.

On the evidence, the defendant's liability was a question for the determination of the jury. Consequently the court below erred in granting the peremptory instruction.

*Reversed and remanded.*

---

MRS. F. J. BOSTICK *v.* MRS. A. V. HAYS ET AL.

[59 South. 877.]

APPEAL AND ERROR. *Law of the case. Mandate.*

If the pleadings and proof upon the hearing of a case, after it is remanded by the supreme court, do not present a different case from that which has been passed on by 'that court, the decree should be in accordance with the directions of the mandate.

APPEAL from the chancery court of Forrest county. HON. T. A. WOOD, Chancellor.